UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

|  |  |  |
|---|---|---|
| ALLEN D. HARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-CV-00100-NCC |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Allen D. Harvey ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 18), Defendant has filed a brief in support of the Answer (Doc. 23), and Plaintiff has filed a reply brief (Doc. 24). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on December 18, 2015 (Tr. 183-200). Plaintiff was initially denied on March 7, 2016, and he filed a Request for Hearing before an

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Administrative Law Judge ("ALJ") (Tr. 105-11, 116-17). After a hearing, by decision dated February 2, 2018, the ALJ found Plaintiff not disabled (Tr. 13-30). On September 24, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2016, and that Plaintiff has not engaged in substantial gainful activity since December 18, 2015, the amended alleged onset date (Tr. 18). The ALJ found Plaintiff has the severe impairments of schizophrenia and remote history of traumatic brain injury, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18-19). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations (Tr. 20). Plaintiff is able to understand, remember and carry out simple instructions consistent with unskilled work, in a job where there are no strict production quotas and he would not be subject to the demands of fast-paced production work (i.e., work by shift not by the hour) (*Id.*). Plaintiff can perform simple decision-making related to basic work functions (*Id.*). Plaintiff can tolerate minor, infrequent changes within the workplace (*Id.*). Plaintiff can tolerate occasional interaction with co-workers and supervisors but in small numbers and for short periods of time, no tandem tasks and work is done relatively independently with minor, superficial interaction with the general public (*Id.*). The ALJ found Plaintiff is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform including laundry worker II, cleaner II, and handpacker

(Tr. 24-25). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 25). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to

3

establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's

conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff argues that the ALJ erred in failing to give proper weight to the opinion of Dr. Joseph Spalding, D.O. ("Dr. Spalding"), Plaintiff's treating psychiatrist[2] (Doc. 18 at 8-11). Second, Plaintiff asserts that the ALJ's RFC determination is not supported by the medical evidence because the ALJ improperly relied on the opinion of a non-examining, non-treating state agency psychological consultant (*Id.* at 11-13). Third, Plaintiff argues that the ALJ erred in her determination the Plaintiff's mental impairments did not meet listing 12.03 (*Id.* at 13-16). For the following reasons, the Court finds that the ALJ committed reversable error in her failure to appropriately evaluate the medical opinion evidence of record.

First, the ALJ's assessment of the medical opinion of Plaintiff's treating psychiatrist is not supported by substantial evidence. "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir.

---

[2] The parties do not dispute that Dr. Spalding is Plaintiff's treating psychiatrist (Doc. 18 at 8; Doc. 23 at 7).

5

2016) (internal quotations omitted). *See also* 20 C.F. R. §§ 404.1527(c), 416.927(c)[3]; *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). In evaluating a medical opinion, the ALJ should consider the length, frequency, nature, and extent of the treatment relationship, supportability, consistency with the record as a whole, specialization of the treating source, and other factors supporting or contradicting the opinion. 20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2). Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must "give good reasons" for doing so. *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

Dr. Spalding completed a Medical Source Statement of Ability to Work-Related Activities (Mental) on July 18, 2017 (Tr. 652-53). Dr. Spalding found Plaintiff's ability to understand, remember, carry out instructions, to interact appropriately with supervision, co-workers, and the public, and to respond to changes in a routine work setting to be affected by his impairments (*Id.*). Specifically, Dr. Spalding opined that Plaintiff is markedly limited[4] in his ability to understand and remember simple instructions, carry out simple instructions, and the ability to make judgments on simple work-related decisions and extremely[5] limited in his ability to understand and remember complex instructions, carry out complex instructions, and his ability

---

[3] Under current regulations, a treating physician's opinion is entitled to no special deference. *See* 20 C.F.R. § 404.1520c(c). These regulations were effective as of March 27, 2017. 20 C.F.R. § 404.1527. However, Plaintiff's claim was filed on December 18, 2015, so the old regulations apply. *See id.*

[4] Marked limitation is defined on the form as "serious limitation in this area. There is a substantial loss in the ability to effectively function" (Tr. 652).

[5] Extreme limitation is defined on the form as "major limitation in this area. The is no useful ability to function in this area" (*Id.*).

to make judgments on complex work-related decisions (Tr. 652). Dr. Spalding further opined that Plaintiff is extremely limited in his ability to interact appropriately with the public, supervisors, and coworkers and extremely limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting (Tr. 653). Dr. Spalding also indicated that Plaintiff's impairments would cause him to be absent from work more than four days per month and off task 25% or more of a typical work day (*Id.*). Dr. Spalding noted that Plaintiff would need to take unscheduled breaks during a working day "most days" for undetermined periods of time due to panic attacks, crying spells and the adverse effect of Plaintiff's medication (Tr. 654). Dr. Spalding also noted that he agreed with Plaintiff's alleged onset date of August 31, 2012 (*Id.*). Dr. Spalding expanded on his check-mark assessment with a brief narrative: "[Plaintiff] suffers from schizophrenia and is on numerous medications for his mood swings and psychotic symptoms" (Tr. 652).

The ALJ afforded Dr. Spalding's opinion "little weight" (Tr. 22). Specifically, the ALJ found Dr. Spalding's opinion not to be supported by the evidence of record, noting mostly benign findings on mental status examinations (*Id.*). The ALJ also found Dr. Spalding's opinion to be inconsistent with Plaintiff's own reports of improvement of symptoms when on medication and not drinking (*Id.*). The ALJ did not specifically identify the discrepancies between the medical record and Dr. Spalding's opinion but did conduct a review of the medical evidence elsewhere in her decision (Tr. 21-22).

The Court finds the ALJ did not provide "good reasons" for assigning Dr. Spalding's opinion "little weight." *Prosch*, 201 F.3d at 1013. First, as Plaintiff's treating psychiatrist, Dr. Spalding has had an extensive treatment relationship with Plaintiff. At the time of his opinion, Dr. Spalding had been treating Plaintiff on a regular basis for approximately a year (Tr. 547). 20

C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Indeed, Plaintiff had been a patient of Dr. Spalding's practice, Clarity Healthcare, or with a colleague from the practice, Dr. Lyle Clark ("Dr. Clark"), since at least April 2013 as they act as members of Plaintiff's treatment team (Tr. 341). *See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006) (discussing treatment of opinions of nurse practitioner, counselor, and medical doctor who worked as a treatment team).

Second, Dr. Spalding's opinion is consistent with the medical record as a whole. As a preliminary matter, the Court notes that the ALJ's review of the medical record is brief. Consisting of only two paragraphs, the ALJ spent a considerable amount of time highlighting Plaintiff's substance abuse and concluded that Plaintiff "has exhibited mostly normal or benign findings on mental status examination" except during times of substance abuse when Plaintiff "has presented with an anxious attitude, a blunted affect and auditory hallucinations" (Tr. 21). Indeed, the record reflects Plaintiff's extensive substance abuse history, specifically as it relates to alcohol. *See, e.g.,* Tr. 321-39 (detailing a 2012 emergency room visit for "acute alcohol intoxication"). The record also indicates that Plaintiff's mental status is much improved when he is sober. For example, in a September 17, 2013 treatment note, Dr. Lyle indicated that Plaintiff reported "staying sober" and "not too bad" and assessed Plaintiff as "doing much better" (Tr. 378). However, the ALJ fails to take into account Plaintiff's participation in a treatment program since January 2012 which requires a daily group meeting and an assigned social worker who plans, participates and appears for each on of Plaintiff's doctor's appointment (Tr. 273, 617). Even within this highly structured environment, Plaintiff's status exams are not as normal as the ALJ appears to suggest. As noted by the ALJ, Plaintiff had largely normal mental status exams

indicating, among other things, that Plaintiff has a pleasant and cooperative demeanor; has no gross abnormalities; demonstrated logical associations; denied hallucinations; denied depressive ideation (*See, e.g.,* Tr. 378, 522). However, in those same records, his treating psychiatrists consistently note that (a) a case worker is in attendance; (b) frequent and necessary modifications to his medication regiment; and (c) continued mental health symptoms including auditory hallucinations and anxiety even when sober and compliant with his medication. For example, on January 28, 2015, Plaintiff's mental status exam was largely normal, but he reported mood swings, depressive symptoms, panic attacks and anxiety. Dr. Clark assessed Plaintiff as having these symptoms, noted the presence of Plaintiff's case manager, and planned an increase in one of Plaintiff's medications (Tr. 423-24). Similarly, a March 23, 2017 note by Dr. Spalding finds his mental status exam to be "generally normal" and "unremarkable" but notes that a medication was increased, that he is in a case management program, and that he has difficulty concentrating; is feeling down; is depressed or hopeless; and has feelings of guilt (Tr. 531-35). While it can be difficult to find records evidencing a significant period of sobriety, this does not necessarily weigh against a finding of disability especially in the context of the record as a whole. As Dr. Bonnie Applewhite, one of Plaintiff's former treating psychiatrists, remarks, "He says that the messages of his auditory hallucinations have been much clearer, but that he feels less bothered and more under control. He says that his voices generally urge him to drink, but that he actually cannot tell them apart from non-psychotic urges[] to drink" (Tr. 560).

Third, Dr. Spalding's opinion is supported by the detailed opinion of Plaintiff's caseworker, Christy Aylor ("Ms. Aylor"). On February 18, 2016, Ms. Aylor completed a Function Report on his behalf (Tr. 273-80). In the Report, Ms. Aylor indicated that, at the time the Report, she had been working with Plaintiff for two years (Tr. 273). In her role as his

9

caseworker, Ms. Aylor spent two to three hours a week helping Plaintiff shop, take care of medical issues, and attend appointments (*Id.*). While Ms. Aylor noted that Plaintiff is able to take care of his own personal care, including the cooking of small, simple meals, throughout her Report she also indicated that Plaintiff requires frequent reminders and encouragement to accomplish most tasks (Tr. 273-280). Specifically, Ms. Aylor detailed, "[h]is understanding is very limited and casework[er] needs to explain things, as well as following instructions, he needs walked thru step by step – no memory" (Tr. 278). Of note, Ms. Aylor described Plaintiff's daily routine, indicating that after he wakes up, Plaintiff "attends group until 3" (Tr. 273).

Fourth, Dr. Spalding's opinion is consistent with the Third Party Function Reports completed by Bruce Charles ("Mr. Charles"), who is Plaintiff's friend, and Nancy Richards ("Ms. Richards"), who is Plaintiff's mother (Tr. 292-297). In his May 9, 2016 report, Mr. Charles indicated that Plaintiff suffers from social phobia and isolation and becomes stress when going into public places (Tr. 293-94). Similarly, Ms. Richards opined in her detailed May 10, 2016 report that Plaintiff has short term memory loss and requires her to remind him of important things (Tr. 297). Plaintiff becomes anxious in crowds and has panic attacks (Tr. 296). She stated that Plaintiff has a companion cat prescribed to him by a doctor (Tr. 297). Ms. Richards also noted that Plaintiff was homeless for several years (Tr. 296). In fact, not addressed by the ALJ, Plaintiff's treatment program through Preferred Family Healthcare provides Plaintiff with "Shelter Plus" to pay for his housing (Tr. 618).

In sum, the ALJ did not provide "good reasons" for assigning the opinion of Dr. Spalding "little weight" in determining Plaintiff's RFC. *Reece*, 834 F.3d at 909. Thus, remand is required. *See Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) ("Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand");

10

*Clover v. Astrue*, No. 4:07CV574-DJS, 2008 WL 3890497, at *12 (E.D. Mo. Aug. 19, 2008) ("Confronted with a decision that fails to provide 'good reasons' for the weight assigned to a treating physician's opinion, the district court must remand."); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

Additionally, the Court finds that the ALJ inappropriately relied on the opinion of a state agency psychological consultant. "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as whole." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). "The regulations also provide that when evaluating a nonexamining source's opinion, the ALJ evaluates the degree to which these opinions consider all of the pertinent evidence in the claim including opinions of treating and other examining sources." *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010). "[The] opinion of a nonexamining consulting physician is afforded less weight if the consulting physician did not have access to relevant medical records made after the date of evaluation." *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011).

On March 22, 2016, Dr. Stanley Hutson, Ph.D., a state agency psychological consultant, issued Case Analyses and Mental Residual Functional Capacity Assessments in conjunction with the Disability Determination Explanations for both Plaintiff's SSI claim and DIB claim (Tr. 84-88, 97-101). In the Case Analyses, Dr. Hutson indicated, when addressing the paragraph B criteria of the mental health listings, that Plaintiff has mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and insufficient information regarding repeated episodes of decompensation (Tr. 84, 97). Dr. Hutson detailed the medical record at the time of the analysis,

11

noting specifically that Plaintiff was able to work part-time and that he seems more stable when taking his medications (Tr. 85, 98). Dr. Hutson's RFC Assessments found Plaintiff "not significantly limited" in most areas except that Plaintiff is "moderately limited" in following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions; the ability to interreact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others (Tr. 86-88, 99-101). As an additional explanation, Dr. Hutson opined:

> He has the ability to understand and remember simple instructions. He has some difficulty with focus, concentration, and persistence but he is able to complete routine tasks. He would benefit [from] having limited social demand in a work setting. He has the ability to adapt to a low stress work setting.

(Tr. 88, 101).

The ALJ afforded the opinion of Dr. Hutson "significant weight" and extensively relied on the reports in her analysis and RFC determination (Tr. 22). In doing so, the ALJ found Dr. Hutson, an individual with "program knowledge" to have provided a detailed function-by-function assessment of Plaintiff's abilities and limitations which was supported by the medical record (*Id.*). Of note, the ALJ spent nearly the same amount of space in her decision addressing Dr. Hutson's opinion alone, a paragraph and a half, as she did on the medical records, two paragraphs (*See* Tr. 21-22). Regardless, as addressed in significant detail above, Dr. Huston's opinion is contradicted by the medical record as a whole and, importantly, the detailed opinions of Dr. Spalding, Plaintiff's treating psychiatrist, and Ms. Aylor, his case worker. "Just as a

person with physical impairments need not be bedridden or completely helpless to be found disabled, a person with mental impairments does not have to be hospitalized or suicidal every day to be found disabled." *Hamilton v. Berryhill*, No. 4:18-CV-367 NAB, 2019 WL 1294796, at *3 (E.D. Mo. Mar. 21, 2019) (citing *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005), for the proposition that it is well settled law that a claimant need not be bedridden or helpless to be found disabled). Therefore, the Court finds that the ALJ failed to appropriately evaluate the opinion evidence of record and her RFC determination is not supported by substantial evidence.

## V. CONCLUSION

For the reasons set forth above, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to conduct an appropriate analysis of Dr. Joseph Spalding's medical opinion; obtain a medical opinion from Plaintiff's current treating psychiatrist; further develop the medical record; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

Dated this 9th day of March, 2020.

                                                              /s/ Noelle C. Collins
                                                              NOELLE C. COLLINS
                                                              UNITED STATES MAGISTRATE JUDGE